[Cite as *Roberts v. McCoy*, 2017-Ohio-1329.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


AMANDA ROBERTS,                          :

    Plaintiff-Appellant,              :          CASE NO.   CA2016-04-071

                                      :          O P I N I O N
- vs -                                              4/10/2017
                                      :

DENISE MCCOY,                            :

    Defendant-Appellee.               :


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2014-10-2651


Dennis Lee Adams, 10 Journal Square, Suite 400, Hamilton, Ohio 45011, for plaintiff-appellant

Stephen C. Lane, 7419 Kingsgate Way, Suite A, West Chester, Ohio 45069, for defendant-appellee


**HENDRICKSON, P.J.**

{¶ 1}  Plaintiff-appellant, Amanda Roberts, appeals a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Denise McCoy.  For the reasons that follow, we affirm the decision of the trial court.

{¶ 2}  On August 29, 2013, McCoy purchased the property in question at 2622 Hilda Avenue, Hamilton, Ohio.  After completing the purchase, McCoy began performing repairs to

prepare the property for resale. McCoy never lived at the Hamilton residence. McCoy completed the repairs between November 2013 and March 2014. The relevant repairs included installing a drop ceiling in the basement, replacing the lower half of portions of the basement drywall, and replacing a toilet and faucet in the upstairs bathroom. McCoy hired a contractor with 15 years of experience, Troy Janutolo, to perform most of the repair work. In the basement, Janutolo replaced the drywall and installed a portion of the drop ceiling. Specifically, Janutolo installed the track for the acoustical ceiling tiles by attaching the track to the floor joists. McCoy then placed the acoustical ceiling tile in the tracks installed by Janutolo. During these repairs, neither McCoy nor Janutolo observed any condition they believed to be mold or mildew on the floor joists or on the backside of the replaced drywall. The front of the replaced drywall did indicate residual damage from moisture.

{¶ 3} In early May 2014, Roberts found the Hamilton property listed for sale online. She visited the property with her realtor. During the visit, Roberts did not personally walk through the entire home. Rather, she "stood in the living room and the kitchen" for "maybe five minutes" because she "knew [she] wanted the house." On May 13, 2014, Roberts contracted to purchase the property. The purchase agreement included a contingency provision making the sale subject to a whole house inspection conducted by Roberts at her expense. McCoy indicated the repairs done to the home and underlying justifications for such repairs by completing an Ohio Residential Property Disclosure Form ("Disclosure Form"). On the Disclosure Form, McCoy disclosed that "[i]t appears the previous owner unhooked [the] laundry room sink and let the basement flood, all water damaged materials were removed[,]" and "I don't believe there is any mold in the home." McCoy did not make any representations to Roberts other than the information contained in the Disclosure Form. Additionally, the Disclosure Form itself advised Roberts in bold text, "every home contains mold. Some people are more sensitive to mold than others. If concerned about this issue,

purchaser is encouraged to have a mold inspection done by a qualified inspector."

{¶ 4} Roberts second visit occurred during the performance of a home and termite inspection by a licensed inspector. Again, she limited her visit to the confines of the kitchen. Shortly after the inspection, Roberts received the inspection report by e-mail and forwarded it to her realtor. Roberts did not review the inspection report before closing and was unaware of the parameters of the inspection. On July 10, 2014, Roberts closed on the property and she moved into the home two days later. When Roberts attempted to put up a shower rod in the upstairs bathroom on August 3, 2014, a portion of the wall broke free and fell to the ground. Roberts took a closer look at the wall and noticed what appeared to be mold in the upstairs bathroom. This revelation caused Roberts to check the basement where she moved a ceiling tile and discovered what appeared to be mold on the floor joists.

{¶ 5} The next day, Roberts hired a certified mold inspector to conduct further inspection on what she believed to be mold. The inspection revealed black mold on the basement rafters, living room area, and basement exterior walls. A few weeks later, Clint Grubb, Roberts' neighbor, advised her that McCoy informed him that the basement was flooded at the time of McCoy's purchase and that McCoy replaced the basement drywall, which displayed visible exterior mold.

{¶ 6} On October 8, 2014, Roberts commenced this action against McCoy alleging negligent misrepresentation, fraudulent concealment, breach of contract, unjust enrichment, and fraud. Roberts alleged McCoy was aware of the mold condition when she completed the Disclosure Form, and that McCoy intentionally misrepresented the condition of the residence to induce its sale. Roberts further alleged the mold condition was undiscoverable during inspections prior to the sale because McCoy concealed it behind the recently installed drywall and drop ceiling.

{¶ 7} On November 20, 2015, McCoy moved for summary judgment on Roberts'

claims. After briefing on the matter, the trial court granted McCoy's motion for summary judgment on all claims. Roberts timely appealed the decision of the trial court.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶ 10} In her sole assignment of error, Roberts presents two issues for review. First, Roberts asserts a material issue of fact existed regarding whether the mold in the ceiling was an observable defect that would have been discovered by a prudent person upon reasonable inspection. Second, Roberts contends a material issue of fact existed regarding whether McCoy had actual knowledge of the mold at the time McCoy completed the Disclosure Form.

{¶ 11} We review a trial court's ruling on a motion for summary judgment de novo. *Grizinski v. Am. Express Fin. Advisors, Inc.*, 187 Ohio App.3d 393, 2010-Ohio-1945, ¶ 14 (12th Dist.). "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Morris v. Dobbins Nursing Home*, 12th Dist. Clermont No. CA2010-12-102, 2011-Ohio-3014, ¶ 14. Summary judgment is proper if there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Williams v. McFarland Properties, LLC*, 177 Ohio App.3d 490, 2008-Ohio-3594, ¶ 7 (12th Dist.). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107. If the moving party meets its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. *Id.*

{¶ 12} Roberts argues the trial court erred in granting summary judgment pursuant to the doctrine of caveat emptor with respect to mold within the basement drop ceiling because

the condition was not observable or discoverable. "[T]he doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the full and unimpeded opportunity to examine the premises, and (3) there is no evidence of fraud on the part of the vendor." *Layman v. Binns*, 35 Ohio St.3d 176, 178-79 (1988). "A defect is observable or discoverable if an ordinarily prudent person would discover it upon reasonable inspection." *Moravek v. Hornsby*, 12th Dist. Clermont No. CA96-12-113, 1997 Ohio App. LEXIS 3032, *6 (July 14, 1997). A defect meeting this description is a patent defect, and all other defects are latent defects. *Clark v. Allen*, 154 Ohio App.3d 200, 2003-Ohio-4617, ¶ 15 (12th Dist.).

{¶ 13} The trial court properly found the doctrine of caveat applied with respect to the mold condition within the basement drop ceiling. The evidence of the condition in the drop ceiling clearly demonstrates it was observable or discoverable. However, there is no evidence that the new basement drywall or the upstairs bathroom visibly displayed any signs indicating moisture or mold. *See, e.g.*, *Binns* at 177-78 (finding defect observable where bowed drywall was detectible with little effort); *Black v. Consentino*, 117 Ohio App.3d 40, 45 (9th Dist.1996) (findings conditions observable where drywall showed clear signs of deterioration). Therefore, we limit our analysis of the doctrine of caveat emptor to the basement ceiling mold condition. Unlike the drywall, Roberts could have easily discovered the condition in the ceiling by simply pushing up a single ceiling tile and examining the floor joists. *See Binns* at 177 ("A duty falls upon the purchaser to make inquiry and examination"). Roberts demonstrated a present ability to conduct such inquiry when she lifted the ceiling tile to discover the condition after moving into the residence. At her deposition, Roberts testified that if one had moved a ceiling tile, "they would have seen the mold."

{¶ 14} Further supporting this finding, McCoy described having to move the ceiling

tiles back into place because other potential purchasers had moved the tiles, presumably to inspect the floor joists. Additionally, Roberts does not dispute she had a full and unimpeded opportunity to inspect the premises. Rather, as analyzed below, Roberts chose not to conduct a mold inspection despite notice of several justifications supporting a mold inspection before purchasing the property. Therefore, the trial court properly found McCoy met the first two elements of the doctrine of caveat emptor with respect to the mold condition in the basement ceiling. The final element of the doctrine requires a showing that there is no evidence of fraud on the part of the seller, which we will analyze below as it is interrelated to the analysis of Roberts' individual claims pertaining to mold found elsewhere on the property.

{¶ 15} The elements of fraud, fraudulent concealment, and negligent misrepresentation are very similar. *See Johnson v. Church of the Open Door*, 179 Ohio App.3d 532, 2008-Ohio-6054, ¶ 15 (9th Dist.). To establish a claim for civil fraud, one must demonstrate (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material, (3) made falsely, with knowledge of its falsity or with reckless disregard for the truth, (4) with the intent to mislead, (5) justifiable reliance on the representation or concealment, and (6) injury proximately caused by such reliance. *Mertens v. Dever*, 12th Dist. Clermont No. CA2005-07-060, 2006-Ohio-1001, ¶ 14; *see also Reardon v. Hale*, 12th Dist. Warren No. CA2006-09-105, 2007-Ohio-4351, ¶ 17 (analyzing the same elements for fraudulent concealment), citing *Fifth Third Bank v. Cope*, 162 Ohio App.3d 838, 2005-Ohio-4626, ¶ 25 (12th Dist.). The elements of negligent misrepresentation are as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Delman v. City of Cleveland Heights*, 41 Ohio St.3d 1, 4 (1989); *Levy v. Seiber*, 12th Dist. Butler Nos. CA2015-02-019, CA2015-02-021, and CA2015-02-030, 2016-Ohio-68, ¶ 36.

{¶ 16} "An action for fraud may be grounded upon failure to fully disclose facts of a material nature where there exists a duty to speak." *Binns*, 35 Ohio St.3d at 178. Pursuant to R.C. 5302.30(D), sellers of residential real estate must complete a disclosure form to inform potential buyers of "material matters relating to the physical condition of the property to be transferred * * * [and] the condition of the structure of the property, including the roof, foundation, walls, and floors * * *." The statute further requires that any disclosure be made in good faith or "honesty in fact in a transaction." R.C. 5302.30(A)(1).

{¶ 17} However, R.C. 5302.30(D) requires sellers to disclose on the form only those defects that are within their actual knowledge. *Clark*, 2003-Ohio-4617 at ¶ 18. R.C. 5302.30(F)(1) relieves sellers of liability for damages "allegedly aris[ing] from any error in, inaccuracy of, or omission of any item of information required to be disclosed in the property disclosure form if the error, inaccuracy, or omission was not within the transferor's actual knowledge." Moreover, sellers have no duty to inspect or acquire knowledge regarding defects of their property. *Clark* at ¶ 19. Rather, the duty to conduct a full inspection falls on the purchasers and the disclosure form does not function as a substitute for such careful inspection. *Id.*

{¶ 18} The Disclosure Form contains the only disclosures McCoy made to Roberts; therefore, the actual knowledge standard discussed above applies to Roberts' contract claims. *Reardon*, 2007-Ohio-4351 at ¶ 15. Nonetheless, R.C. 5302.30 does not displace a seller's common-law duties to buyers, such as the "duty to disclose material facts which are latent" when the seller possesses actual knowledge of the defect at the time of the transaction. *Binns* at 178; *see also Clark* at ¶ 15. With respect to the knowledge element of Roberts' tort claims, she must only prove McCoy acted with "utter disregard and recklessness

- 7 -

as to whether [a fact] is true or false," and such knowledge may be inferred.  *Reardon* at ¶ 18.

{¶ 19}  Therefore, the questions presented are whether McCoy had the requisite knowledge of mold at the residence to support Roberts' contract and tort claims, and if so, whether such claims entitle Roberts to a remedy at law or in equity.

{¶ 20}  First, we address whether there is evidence supporting a finding of a genuine issue of material fact with regard to fraud by McCoy, which would prevent the application of the doctrine of caveat emptor to the mold condition in the basement ceiling, and prove an essential element of Roberts' claims with respect to the remainder of the property.  The basis of Roberts' fraud claim relies on the information contained in the Disclosure Form. Specifically, McCoy disclosed that the basement drain was cleaned after it backed up, which had caused "[a] small amount of water * * * in [the] laundry r[oo]m."  McCoy disclosed that she has not seen any "water leaks in [the] basement since [she] has owned" the property. She checked "yes" to the question whether she "kn[e]w of any water or moisture related damage to floors, walls or ceilings as a result of flooding; moisture seepage; moisture condensation; ice damming; sewer overflow/backup; or leaking pipes, plumbing fixtures or appliances."  McCoy explained this answer by disclosing that "[i]t appears the previous owner unhooked [the] laundry room sink and let the basement flood, all water damaged materials were removed."  Next, she checked "no" to the question: "[h]ave you ever had the property inspected for mold by a qualified inspector?"  McCoy disclosed, "I don't believe there is any mold in the home."

{¶ 21}  Based on this explanation, McCoy argues she did not make a material factual representation, but merely expressed her opinion.  If we assume arguendo, as the trial court did, McCoy's response on the Disclosure Form was a material factual representation, then, when considering the Disclosure Form in its entirety – Roberts still has failed to demonstrate

(1) the statements were made falsely, with knowledge of their falsity or with reckless disregard for the truth, (2) with the intent to mislead, and (3) that Roberts justifiably relied upon the representations.

{¶ 22} McCoy stated in her affidavit that she neither observed mold anywhere in the residence nor was she advised of the presence of mold at the time of the sale. McCoy did observe water stains on the front side of the basement drywall prior to the sale; therefore, she replaced the drywall. However, the backside of the drywall did not display any signs of water or moisture. Additionally, she did not observe mold when installing the acoustic ceiling tiles on the basement drop ceiling. Likewise, the repairman, Janutolo, did not observe any indication of moisture, mold, or mildew in the basement drywall. Janutolo further indicated that he did not observe any mold while installing the track for the drop ceiling. However, Grubb claimed that McCoy had informed him that the basement was flooded and the drywall was replaced due to the presence of mold.

{¶ 23} Based on Grubb's affidavit and Roberts' deposition, Roberts argues there is a genuine issue of material fact regarding the falsity of the statements contained within the Disclosure Form. However, this evidence does not rebut the statements in the Disclosure Form or the sworn statements made by McCoy and Janutolo. Rather, Grubb's statements further demonstrate that McCoy was aware of the presence of moisture in the basement and on the exterior of the drywall, and thus, McCoy hired Janutolo to replace the drywall. Grubb's affidavit fails to rebut that neither McCoy nor Janutolo were aware of the presence of mold after completing the repairs on the basement ceiling, behind the drywall, or anywhere else on the property at the time of sale. Therefore, Roberts fails to establish a genuine issue of material fact regarding the knowledge element of her tort claims.

{¶ 24} Moreover, there is no indication from the evidence that the disclosures made on the Disclosure Form were made falsely or with the intent to mislead Roberts. The

information within the Disclosure Form and the statements from McCoy and Janutolo's affidavits is consistent. McCoy apprised Roberts of the presence of flooding and moisture in the basement, which McCoy believed to be repaired with the installation of the drop ceiling and the new drywall. Roberts asserts McCoy installed the drop ceiling and drywall to cover the mold condition; however, there is no evidence in the record to support this assertion.

{¶ 25} Furthermore, Roberts fails to present evidence that she justifiably relied upon McCoy's representations in purchasing the home. The purchase agreement was contingent upon a home inspection, which was performed prior to closing. "A buyer cannot be said to have justifiably relied upon representations made by the seller where the purchase agreement is clearly contingent upon the inspection rather than any alleged representations." *Liotta v. Eckley*, 8th Dist. Cuyahoga No. 75127, 2000 Ohio App. LEXIS 68, *10 (Jan. 13, 2000); *see also Kimball v. Duy*, 11th Dist. Lake No. 2002-L-046, 2002-Ohio-7279, ¶ 24. Moreover, Roberts was apprised of the presence of moisture as well as the flood history in the basement prior to closing and chose not to hire a certified mold inspector until after completing the purchase of the property. Roberts made this choice despite having ample opportunity for a mold inspection before closing pursuant to the contingency agreement.

{¶ 26} Therefore, Roberts has failed to establish a genuine issue of material fact remains regarding the above-analyzed elements for her fraud, negligent misrepresentation, and fraudulent concealment claims. In turn, Roberts failed to present evidence rebutting the fraud element of the doctrine of caveat emptor.

{¶ 27} Next, we turn to Roberts' contract claims. To establish a claim for breach of contract, a plaintiff must prove (1) the existence of a contract, (2) plaintiff fulfilled his or her contractual obligations, (3) defendant failed to fulfill his or her contractual obligations, and (4) due to this failure plaintiff incurred damages. *Nguyen v. Chen*, 12th Dist. Butler No. CA2013-10-191, 2014-Ohio-5188, ¶ 43. Roberts bases her breach of contract claim on the

representations made in the Disclosure Form. As discussed above, R.C. 5302.30(D) required McCoy to disclose only those defects that were within her actual knowledge. *Clark*, 2003-Ohio-4617 at ¶ 18; *see also Kearns v. Huckaby*, 12th Dist. Butler No. CA2005-12-507, 2006-Ohio-5196, ¶ 28 (stating to prevail on a claim based on a disclosure form, one must demonstrate the seller had actual knowledge of the alleged errors on the form). With respect to Roberts' tort claims, we found above that a genuine issue of material fact did not exist as to whether McCoy made false representations on the Disclosure Form, with knowledge of the representations falsity or with reckless disregard for the truth. Therefore, because the actual knowledge requirement is a higher burden to prove than reckless disregard for the truth, our finding in regards to Roberts' tort claims extends to her breach of contract claim.

{¶ 28} Finally, Roberts asserts a claim for unjust enrichment and argues the alleged fraud, misrepresentations, and concealment by McCoy, does not entitle McCoy to the full purchase price for the property because if the information within the Disclosure Form was accurate, then the property would have sold for a lower price. A party asserting a claim for unjust enrichment must demonstrate that (1) he or she conferred a benefit upon a defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment. *Everhart v. Everhart*, 12th Dist. Fayette Nos. CA2013-07-019 and CA2013-09-026, 2014-Ohio-2476, ¶ 46; *see also Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged*, 15 Ohio St.3d 44, 46 (1984) (stating unjust enrichment is an equitable legal vehicle for obtaining a just result and to provide a remedy where none is otherwise available).

{¶ 29} Consistent with our findings above, we find McCoy has not been unjustly enriched by retaining the full purchase price. We note the purpose of an unjust enrichment action is not to compensate Roberts for any loss or damages that she may have suffered, but rather to compensate Roberts for the benefit she unjustly conferred on McCoy. *Accord*

*Hughes v. Oberholtzer*, 162 Ohio St. 330, 335 (1954). Contrary to Roberts' claim otherwise, Roberts failed to demonstrate that McCoy had knowledge of any inaccuracies within the Disclosure Form. Therefore, Roberts has failed to demonstrate McCoy had knowledge of any benefit conferred upon her that would require compensation for Roberts in equity.

{¶ 30} Accordingly, Roberts' sole assignment of error is overruled.

{¶ 31} Having construed the evidence in a light most favorable to Roberts on each issue presented for review, we find Roberts has failed to demonstrate genuine issues of material fact exist. The trial court properly determined that McCoy is entitled to judgment as a matter of law.

{¶ 32} Judgment affirmed.

RINGLAND and PIPER, JJ., concur.