[Cite as *Shannon v. Fischer*, 2020-Ohio-5567.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| CHRIS SHANNON, et al., | : | |
| Appellants, | : | CASE NO. CA2020-05-022 |
| | : | O P I N I O N |
| - vs - | | 12//7/2020 |
| | : | |
| ROBERT FISCHER, et al., | : | |
| Appellees. | : | |


CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2017CVH01625


Cooper & Elliott, LLC, Jeffrey T. Kenney, Melanie M. Lennon, 2175 Riverside Drive, Columbus, Ohio 43221, for appellants Chris and Erika Shannon

Shrive Law Firm, Brian C. Shrive, 7305 Tangleridge Drive, Cincinnati, Ohio 45243, for appellees Robert and Amy Fischer

Gallagher Sharp, LLP, Timothy T. Brick, Steven D. Strang, Drew D. Price, 1215 Superior Avenue, 7th Floor, Cleveland, Ohio 44114, for appellees Deborah Martin and Keller Williams Advisors Realty/Fri Mason LLC


**RINGLAND, J.**

{¶1} Appellants, Chris and Erika Shannon, appeal the grant of summary judgment by the Clermont County Court of Common Pleas in favor of appellees, Robert and Amy Fischer, Deborah Martin, and Keller Williams.

{¶2} The Fischers purchased property in 2012 after being advised of a previous

water intrusion in the basement when the sump pump failed, and water leaked onto the carpet. The prior owners indicated that they installed an electrical back-up and claimed no additional water issues. In December 2014, the Fischers experienced additional sump pump issues, which caused flooding in the basement. As a result, they replaced the sump pump and hired a water clean-up company to remediate the flood.

{¶3}   In 2015, the Fischers decided to sell their home, and listed the property with Robert's sister, Deborah Martin, who is a real estate agent employed by Keller Williams. The Fischers completed a residential property disclosure form and stated that there were no water intrusion issues other than the sump pump malfunction that occurred in 2014. The Fischers stated that they had replaced the sump pump, hired a water clean-up company, and had "no further issues." The Fischers also stated that the property had not been inspected for mold by a qualified inspector. The Fischers did not list the previous water intrusion that they were warned of when they purchased the home, as such did not occur during their ownership.

{¶4}   The Shannons attended two open houses and one private showing of the property prior to purchasing it. During the open houses, Mildred Fischer was present on behalf of Deborah. Mildred, who is Robert and Deborah's mother, is also employed by Keller Williams. The Shannons asked Mildred questions about water stains in the basement, as well as a drywall patch under a window well in the basement. Mildred told the Shannons that the water stain was likely from the 2014 sump pump flood and that the drywall patch was likely due to her grandchildren making a hole in the wall with a pool table cue.

{¶5}   Before ultimately purchasing the property, the Shannons had an inspection performed, but a mold inspection was never completed. The Shannons and Fischers entered into a purchase agreement, whereby the Shannons agreed to purchase the

property for $275,000.

{¶6} Less than two weeks after closing, there was a significant water intrusion in the basement that originated from multiple window wells and a door. One such intrusion occurred directly above the patched area where Mildred claimed a pool cue struck the wall. Thereafter, water intrusions occurred three more times. Because of the intrusions, the Shannons hired professional water and mold remediation services, and discovered extensive water damage in the basement, as well as a black mold infestation. The costs associated with addressing the discovered issues exceeded $43,000.

{¶7} The Shannons filed suit against the Fischers, Deborah Martin, and Keller Williams. The Complaint alleged the following causes of action: 1) negligence and negligent misrepresentation against the Fischers, Deborah, and Keller Williams, 2) fraud against the Fischers, 3) breach of contract against the Fischers, 4) violations of R.C. 4735.67 against Deborah and Keller Williams, 5) fraudulent misrepresentation against Deborah and Keller Williams, and 6) punitive damages against the Fischers, Deborah, and Keller Williams.

{¶8} Discovery revealed that a neighbor witnessed Robert draining water from the basement on at least four different occasions, each time occurring after a heavy rainfall. An employee from the water remediation company employed by the Fischers averred that the Fischers removed drywall and baseboards and that there was visible mold where the drywall and baseboards were removed. The employee also averred that his company did not perform any mold remediation on the house per the Fischers' denial of the recommended service. An employee of the mold remediation company hired by the Shannons averred that the mold infestation was indicative of repeated water intrusions over several years.

{¶9} The Fischers, Deborah, and Keller Williams moved for summary judgment. In separate decisions, the trial court granted summary judgment in favor of all defendants on

all claims.  The Shannons now appeal the trial court's grant of summary judgment, raising the following assignments of error.

{¶10}  Assignment of Error No. 1:

{¶11}  THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO APPELLANT'S [SIC] CLAIMS OF FRAUD, BREACH OF CONTRACT, FRAUDULENT MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, AND NEGLIGENCE AGAINST THE FISCHER DEFENDANTS.

{¶12}  The Shannons argue in their first assignment of error that the trial court erred in granting summary judgment in favor of the Fischers.

{¶13}  An appellate court reviews a trial court's ruling on a motion for summary judgment de novo.  *Grizinski v. Am. Express Fin. Advisors, Inc.,* 187 Ohio App.3d 393, 2010-Ohio-1945, ¶ 14 (12th Dist.).  "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial."  *Morris v. Dobbins Nursing Home,* 12th Dist. Clermont No. CA2010-12-102, 2011-Ohio-3014, ¶ 14.

{¶14}  Summary judgment is proper if there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party.  Civ.R. 56(C).

### Fraudulent Nondisclosure

{¶15}  A claim of fraudulent nondisclosure requires proof of the following elements: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to its truth or falsity that knowledge may be inferred, (4) with the intent of misleading another to rely on it, (5) justifiable reliance upon the

representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 49 (1991).

{¶16} "An action for fraud may be grounded upon failure to fully disclose facts of a material nature where there exists a duty to speak." *Layman v. Binns*, 35 Ohio St.3d 176, 178 (1988); *Roberts v. McCoy*, 12th Dist. Butler No. CA2016-04-071, 2017-Ohio-1329, ¶ 16; *Reese v. VanHeeswijk*, 10th Dist. Franklin No. 93AP-389, 1993 Ohio App. LEXIS 4706, *12 (Sep. 30, 1993). Buyers are protected by law against "being misled by others into making unwise decisions which result in financial loss" when sellers fail to "fully disclose" material facts. *Miles v. McSwegin*, 58 Ohio St.2d 97, 99-100 (1979).

{¶17} "A party is under a duty to speak, and therefore liable for non-disclosure if the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another party to act or refrain from acting, and the non-disclosing party knows that the failure to disclose such information to the other party will render a prior statement or representation untrue or misleading." *Armbruster v. Mason*, 5th Dist. Ashland No. CA-766, 1982 Ohio App. LEXIS 14819, *11-12 (July 20, 1982).

{¶18} Pursuant to R.C. 5302.30(D), sellers of residential real estate must complete a disclosure form to inform potential buyers of "material matters relating to the physical condition of the property to be transferred * * * [and] the condition of the structure of the property, including the roof, foundation, walls, and floors * * *." The statute further requires that any disclosure be made in good faith or with "honesty in fact in a transaction." R.C. 5302.30(A)(1). R.C. 5302.30(D) requires sellers to disclose on the form only those defects that are within their actual knowledge. *Roberts,* 2017-Ohio-1329 at ¶ 16.

{¶19} The trial court noted that some genuine issues of material fact were created through the discovery evidence specific to aspects of this legal standard. Nonetheless, the trial court determined that summary judgment was proper because the Shannons did not

justifiably rely on representations made by the Fischers.

## Justifiable Reliance

{¶20} "Reliance is justifiable if the representation does not appear unreasonable on its face and if there is no apparent reason to doubt the veracity of the representation under the circumstances." *AmeriFirst Sav. Bank v. Krug*, 136 Ohio App.3d 468, 495 (2d Dist.1999). Justifiable reliance, as contrasted with reasonable reliance, "'is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.'" *Id.* at 496, *quoting Field v. Mans*, 516 U.S. 59, 70-71, 116 S.Ct. 437 (1995).

{¶21} In determining whether there was justifiable reliance, "the court must inquire into the relationship between the parties. * * * The court must consider the nature of the transaction, the form and materiality of the representation, the relationship of the parties and their respective means and knowledge, as well as other circumstances." *Mishler v. Hale*, 2d Dist. Montgomery No. 25962, 2014-Ohio-5805, ¶ 33.

{¶22} Even the existence of an "as is" clause does not overcome the ability of buyers to justifiably rely on representations made by the sellers regarding defects in the home. *Duman v. Campbell*, 8th Dist. Cuyahoga No. 79858, 2002-Ohio-2253, ¶ 28-29 (summary judgment was not appropriate where there existed a genuine issue of material fact regarding whether the buyers were reasonably justified in relying on the sellers' disclosure that no water problems existed in the basement).

> An "as is" clause bars an action for "passive nondisclosure" but does not shield the seller from an "active" fraud or commission (as opposed to a fraud of omission), i.e., a misrepresentation or fraudulent concealment. Thus, an "as is" clause does not protect a seller who positively misrepresents or conceals the complained of condition. "An 'as is' clause cannot be relied on to bar a claim for fraudulent misrepresentation or fraudulent concealment." Thus, while a seller may not have a duty to disclose a defective condition, the seller may not take affirmative

steps to misrepresent or to conceal the condition.

(Internal citations omitted). *Hubbard Family Trust v. TNT Land Holdings, LLC*, 4th Dist. Pike No. 12CA833, 2014-Ohio-772, ¶ 20.

{¶23} The requirement of justifiable reliance tests the credibility of the claim that fraud induced a party to act and it is generally a question of fact. *March v. Statman*, 1st Dist. Hamilton No. C-150337, 2016-Ohio-2846, ¶ 22. *See also Teter v. Rossi*, 11th Dist. Trumbull No. 98-T-0044, 1999 Ohio App. LEXIS 2817, *8-9 (June 18, 1999) (reversing summary judgment because an issue of fact remained regarding the appellant's reliance on owner's comments on water damage and whether such reliance was justifiable); *Gross v. Garrison*, 5th Dist. Delaware No. 81-CA-5, 1981 Ohio App. LEXIS 11560, *8 (Dec. 7, 1981) (the question of whether or not a reasonable inspection of the house would have revealed the problem "was a question for the jury"); *Gorbett v. HGM Hilltop*, 8th Dist. Cuyahoga No. 58240, 1991 Ohio App. LEXIS 2789, *6 (June 13, 1991) (reversing trial court's grant of summary judgment because there existed an issue of fact regarding whether the sump pump was concealed during a buyer's investigation of a property before buying it); and *Mohley v. Ottens*, 3d Dist. Hancock No. 5-94-8, 1994 Ohio App. LEXIS 4377, *2-3 (Sep. 21, 1994) ("whether any representations were made by the [sellers] and, if so, whether such representations were misrepresentations, and were material in nature, are all questions of fact precluding the trial court from granting summary judgment").

### "Full" Disclosure of Latent and Patent Defects

{¶24} In Ohio, the seller of real property must disclose substantial latent defects to the purchaser. *McClintock v. Fluellen*, 8th Dist. Cuyahoga No. 82795, 2004-Ohio-58, ¶ 16. As noted earlier, Ohio's real property disclosure statute, R.C. 5302.30, requires sellers of real estate to disclose defects within their actual knowledge on a residential property disclosure form. If the seller fails to disclose a material fact on the form with the intention

of misleading the buyer, and the buyer relies on the form, the seller is liable for any resulting injury. *Melenick v. McManamon*, 8th Dist. Cuyahoga Nos. 92453 and 92675, 2010-Ohio-1051, ¶ 24.

{¶25} Ohio courts have determined that a seller's failure to "fully disclose" latent and patent defects creates a genuine issue of material fact rendering summary judgment inappropriate. For example, the Second District reversed a trial court's grant of summary judgment because genuine issues of material fact remained where the sellers did not disclose that a well that provided water to the property was high in sulfur content resulting in water with an unpleasant taste and smell. *Hull v. Dietrich*, 2d Dist. Miami No. 97-CA-32, 1997 Ohio App. LEXIS 5955 (Dec. 31, 1997).

{¶26} Despite the buyers procuring an inspection prior to their purchase, the Second District focused upon the fact that the sellers indicated on the residential disclosure form that the source of water was the well, but did not disclose the sulfur issue. In so deciding, the court relied on law that "fraud may be grounded upon failure to fully disclose facts of a material nature where there exists a duty to speak." *Id*. at *13.

{¶27} Similarly, the Eleventh District reversed the grant of summary judgment where sellers made representations, which were later determined to be false, regarding the cause of cracks in a house before selling it to the buyers. *Flute et al., v. Logan et al.*, 11th Dist. Lake No. 8-135, 1981 Ohio App. LEXIS 14164 (June 29, 1981). The buyers had a home inspection performed before purchasing the home and inquired into the cause of the cracks. Even so, the Eleventh District found that there was an issue of fact "as to whether appellees knowingly withheld knowledge of the latent defects which were the *real cause* of the cracks." (Emphasis added.) *Id*. at *6. In so doing, the court reasoned that failure to "fully disclose" material facts supports a fraud action. *Id*. at *5.

{¶28} The Fifth District also found that genuine issues of material fact precluded

summary judgment even where home buyers failed to read a report regarding past termite damage that was available to them. *Hartfield v. Coldwell Banker-McMahon Real Estate Co.*, 5th Dist. Licking No. CA-3221, 1987 Ohio App. LEXIS 5680 (Jan. 8, 1987). The court found that further litigation was necessary in order to determine whether the buyers acted reasonably by relying on the seller's statements that there were no bug problems in the home when deciding not to read the report.

{¶29} When the buyers asked if there were any bug-related issues, the sellers did not disclose that there had been a termite infestation, and only stated that there were no bug problems. The Fifth District reasoned, "an action for fraud is maintainable as a result of the failure of a party in a transaction such as this to fully disclose facts of a material nature where there exists a duty to speak." *Id.* at *4. Thus, the court determined that summary judgment was not proper where "reasonable jurors could find that the representation to the appellants by the appellee induced the appellant not to read the report at closing." *Id.* at *6.

## Genuine Issues of Material Fact Remain

{¶30} After reviewing the record, we find that the trial court erred in granting summary judgment in favor of the Fischers, as multiple issues of material fact remain that require further litigation.

{¶31} In granting summary judgment in favor of the Fischers, the trial court relied upon *Roberts*, 2017-Ohio-1329, in which this court affirmed the trial court's grant of summary judgment in a water and mold damage case. In *Roberts*, we determined that summary judgment was appropriate where the prior owner and a contractor hired to make repairs on the home averred that they were unaware of any mold on the property at the time of sale.

{¶32} However, and unlike *Roberts*, there is evidence in the case sub judice to

indicate that the Fischers had actual knowledge of an ongoing water intrusion issue and had actual knowledge of the presence of mold behind the basement walls. The Fischers' deposition testimony and information on the residential disclosure form were directly contradicted by three different witness affidavits.

{¶33} First, a neighbor averred that Robert Fischer pumped water out of the basement on at least 4 separate occasions after heavy rain fall. The neighbor, who lived directly across from the property in question, averred that she observed Robert pumping water out of the basement with a "large drainage hose" and that in her experience, Robert was not cleaning his carpets at the time of the drainage. Conversely, Robert testified that he was cleaning carpet in the basement, not pumping water out because of a flood.

{¶34} This conflicting testimony presents a genuine issue of material fact regarding Robert's actual knowledge of flooding problems in the basement, and will require a finder of fact to determine what Robert was doing on the four separate occasions in question and whether he knew that the water intrusions existed separate from the sump pump issue.

{¶35} This issue of fact impacts the question of justifiable reliance. If Robert failed to exercise reasonable care by not disclosing the other floods and their cause, such would render the prior statements and representations on the disclosure statement untrue or misleading. Whether the basement had water issues and from what cause, which was a specific question on the residential form, is a material fact that could justifiably induce the Shannons to act or refrain from acting.

{¶36} Evidence obtained during discovery also indicated that the Fischers had actual knowledge of the mold in the basement, refused services to remediate it, and took actions on their own to cover the molded area by installing new drywall. An employee from the company the Fischers hired to remediate water damage during their ownership of the property averred that there was visible mold in the areas specific to where the Fischers

removed drywall and baseboards.[1]  However, and despite knowing that the mold issue existed, the Fischers did not agree to mold remediation services through the company.  The employee's affidavit was accompanied by the company's estimate, which supported the employee's testimony that the Fischers did not have mold remediation performed despite being advised of its presence.

{¶37}  It was clear from the subsequent remediation of the water intrusions that the window wells and door required repair and that the mold required remedy.  Viewing the evidence in a light most favorable to the Shannons, the Fischers were advised of the mold issues, and knew that flooding was caused from sources other than a single failure of the sump pump.  However, the Fischers failed to disclose the existence of these issues, or their decision not to remediate the issues, on the disclosure form.

{¶38}  The Shannons also presented affidavit testimony from the owner of the company they hired to remediate mold damage that the mold was due to repeated water issues.  The owner of the company averred that there was "extensive mold" present in the basement and that based on his "education, training and experience in mold remediation, the extent of mold" in the basement "was an indication of repeated water intrusion over several years."

{¶39}  While it is undisputed that the Shannons had a home inspection and did not have a mold inspection performed, those facts do not vitiate the Fischers' statutory duty to produce a truthful residential disclosure report.  Nor does the fact that the Shannons agreed in their purchase contract to rely upon their own inspections where there is evidence that the Fischers knew about multiple water intrusions separate from the sump pump incident in

---

1. Robert testified that he did not see any mold when he removed the drywall and baseboards.  Thus, there is a credibility determination that must be made regarding this evidence as well.

2014, and that mold was growing in the basement.[2]

**{¶40}** While the Shannons agreed in their purchase contract that they were going to rely upon their own inspection of the property, they were not sufficiently alerted to a possible defect with the window wells and door or to the possibility of growing mold so as to require further inquiry that a reasonable inspection would provide.[3] *See Melenick*, 2010-Ohio-1051 at ¶ 33 (a buyer is charged with knowledge of the conditions that a reasonable inspection would have disclosed).

**{¶41}** As noted above, the trial court relied upon our prior decision in *Roberts v. McCoy* in granting summary judgment. In *Roberts*, this court noted, "a buyer cannot be said to have justifiably relied upon representations made by the seller where the purchase agreement is clearly contingent upon the inspection rather than any alleged representations." 2017-Ohio-1329 at ¶ 25. However, and as noted above, the facts herein are distinguishable from *Roberts* so that the law relied upon by the trial court, while correctly stated, is not dispositive of the issue currently on appeal.

**{¶42}** In *Roberts*, the seller had repairs made after a flood in the basement occurred and during the repairs did not observe any mold on areas above a drop ceiling or behind areas of drywall. Nor did the employee of the company who performed the repairs on the owner's behalf observe any indication of mold. Before the buyer purchased the home, the seller informed the buyer of the presence of flooding and moisture in the basement and

---

2. The contract provides, "SELLER(S) AND REALTORS SHALL NOT BE RESPONSIBLE FOR ANY UNKNOWN AND/OR DISCLOSED DEFECTS IN THE REAL ESTATE. BUYER ACKNOWLEDGES THAT BUYER HAS BEEN ADVISED BY REALTOR TO CONDUCT INSPECTIONS OF THE REAL ESTATE THAT ARE OF CONCERN TO BUYER AND HAS BEEN PROVIDED THE OPPORTUNITY TO MAKE THIS CONTRACT CONTINGENT UPON THE RESULTS OF SUCH INSPECTION(S)."

3. However, we would also note that the contract provides in the Real Estate Inspection Contingency section that while the buyers would not rely upon "**any representation by the REALTORS involved**," the buyer could rely upon the "Seller's certification herein," which stated that the sellers did not have knowledge of "adverse environmental conditions" on the property. [Bold sic.] An issue of fact remains here as well regarding whether mold would constitute an adverse environmental condition that the Fischers should have included in the seller certification section of the contract.

informed the buyer of her belief that such was remediated with the installation of the new drop ceiling and new drywall.

{¶43} This court agreed with the trial court that "there is no indication from the evidence that the disclosures made on the Disclosure Form were made falsely or with the intent to mislead [the buyer]." We further considered that the information within the disclosure form and the statements from the seller and the employee were consistent with the summary judgment evidence and that no evidence indicated that the seller or the employee had any actual knowledge that there was mold growing as a result of flooding that occurred in the basement.

{¶44} Thus, we determined in *Roberts* that the buyer did not reasonably rely on any representations by the seller because she had been apprised of the presence of moisture, the flood history, and repairs made in the basement prior to closing but chose not to hire a certified mold inspector until after completing the purchase of the property. The buyer made this choice despite having ample opportunity for a mold inspection before closing pursuant to the contingency agreement and despite being given an accurate flood history and notice of repairs required and made.

{¶45} Unlike *Roberts*, however, the evidence here demonstrates that the Shannons had not been apprised of an accurate flood history, what repairs were recommended but not made, what repairs were actually made to the drywall and baseboards, or to the possible presence of mold. Also unlike *Roberts*, the summary judgment evidence is not consistent with the Fischers' statements on the disclosure form that the only water issue in the basement was based on a single sump pump failure that was remedied by the water remediation company with no further issues.

{¶46} The evidence *actually* indicates that the basement flooded on four prior occasions enough so that it required pumping of water from the basement after rainfall.

Moreover, the Fischers, as well as the employee they hired to remediate the flood, observed visible mold growing. The Fischers also made repairs to the basement that were not disclosed, and also refused services that would have remediated mold in the basement. This evidence raises an issue of fact in regard to whether the Fischers had actual knowledge of the true flood history and presence of mold, as well as whether the statement on the disclosure form was made with falsity or with the intent to mislead.

{¶47} We would also note that unlike the drop ceiling issue in *Roberts* in which a single tile may be easily lifted for inspection, there was no way of knowing of the latent defect in the window wells and the door that a reasonable inspection could have uncovered. Nor could the inspection of areas covered by drywall be performed as reasonably as an inspection made possible by simply lifting a ceiling tile to see what could be observed.

{¶48} *Roberts* continues to apply in situations where the disagreement between a buyer and seller involves passive nondisclosures. However, *Roberts* does not control a situation where sellers make positive misrepresentations or actively conceal latent defects. *See also Liotta v. Eckley*, 8th Dist. Cuyahoga No. 75127, 2000 Ohio App. LEXIS 68, at *7 (Jan. 13, 2000) ("defendants are not protected from a positive misrepresentation or concealment of such latent defects" despite contract clause making the sale contingent upon an inspection).

{¶49} The facts and circumstances are such that *Roberts* does not control the case sub judice because there are issues of fact regarding positive misrepresentations made in an attempt to conceal latent defects that could not have been discovered through a reasonable inspection.

{¶50} As noted above, Ohio law imposes a duty to make full disclosure of the circumstances where such disclosure is "necessary to dispel misleading impressions created by a partial revelation of the facts." *Klasa v. Rogers*, 8th Dist. Cuyahoga No. 83374,

2004-Ohio-4490, ¶ 25. The evidence submitted suggests that the Fischers created a false impression regarding the *real cause* of the water intrusion by stating that a single sump pump failure was the cause of the flooding in the basement without also advising of the mold and additional repeated sources of flooding.

{¶51} Moreover, the sales contract's clause cannot be relied upon to displace summary judgment evidence of the fraudulent misrepresentation or fraudulent concealment that occurred. *See Melenick*, at ¶ 37 ('as is' clause in a sales contract "cannot be relied upon to bar a claim for fraudulent misrepresentation or fraudulent concealment").

{¶52} In a similar case, the Fifth District Court of Appeals reversed the grant of summary judgment in favor of a seller who entered into a purchase agreement with a buyer whose sales contract noted the purchaser's agreement to not rely upon any representations of the seller. *Ferguson v. Cadle*, 5th Dist. Richland No. 2008 CA 0077, 2009-Ohio-4285, ¶ 4.

{¶53} In *Ferguson* at ¶ 4, the sales contract stated,

> Purchaser acknowledges that, except as otherwise herein noted, the real estate property is being purchased in its present physical condition after examination and inspection by Purchaser. Purchaser further acknowledges that Purchaser(s) are relying solely upon such examination and inspection with reference to condition, value, character, and dimensions of property, improvements, component systems and fixtures. Purchaser acknowledges that neither Seller, nor Seller's Agent(s) have made any representation or warranties upon which Purchaser has been induced to rely; rather Seller and Seller's Agent(s) have encouraged Purchaser to conduct a thorough and independent inspection(s) of the premises.

{¶54} Despite the sales contract's clause, the Fifth District Court of Appeals determined that summary judgment was inappropriate because the seller fraudulently misrepresented the number of incidents of water intrusion in the basement on the disclosure form.

{¶55} Like *Ferguson*, there is a genuine issue of material fact regarding the Fischers' misrepresentations on the disclosure form despite an agreement in the sales contact that the Shannons would rely upon their own inspection. Instead of disclosing all of the information within their actual knowledge, there is proper summary judgment evidence that the Fischers represented to the Shannons that the visible water damage was limited to a faulty sump pump and that the repaired drywall was caused by a pool cue incident. Thus, there is evidence that raises issues of fact as to whether the Fischers *fully* disclosed the real cause of the mold and water damage despite having *actual knowledge* that the intrusions were from a source other than the faulty sump pump.

{¶56} The evidence, when viewed in a light most favorable to the Shannons, also indicates that the Fischers failed to fully disclose that the water intrusions were repeated and had occurred over time thereby causing mold. The Shannons presented evidence that at least four separate occasions of rainfall resulted in water being pumped out of the basement. The evidence submitted by the Shannons also indicates that the Fischers knew that mold was growing in the basement and refused service to remediate the mold in existence during their ownership of the home.

{¶57} Thus, the evidence, both conflicting and undisputed, raises genuine issues of material fact that require further litigation. This is especially true where the determination of justifiable reliance is a question of fact that requires a review of the qualities and characteristics of the particular plaintiff, the relationship between the parties, the nature of the transaction, the form and materiality of the representation, the relationship of the parties and their respective means and knowledge, as well as other circumstances.

{¶58} The Shannons' first assignment of error is sustained.[4] The trial court's decision granting summary judgment in favor of the Fischers is reversed, and the cause is remanded for further proceedings.

{¶59} Assignment of Error No. 2:

{¶60} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE KELLER DEFENDANTS ON THE APPELLANTS' CLAIMS FOR VIOLATIONS OF R.C. 4735.67, FRAUDULENT MISREPRESENTATION, NEGLIGENCE, AND NEGLIGENT MISREPRESENTATION.

{¶61} The Shannons argue in their second assignment of error that the trial court erred in granting summary judgment in favor of Deborah Martin and Keller Williams.

{¶62} According to R.C. 4735.67,

> A licensee shall disclose to any purchaser all material facts of which the licensee has actual knowledge pertaining to the physical condition of the property that the purchaser would not discover by a reasonably diligent inspection, including material defects in the property, environmental contamination, and information that any statute or rule requires be disclosed. For purposes of this division, actual knowledge of such material facts shall be inferred to the licensee if the licensee acts with reckless disregard for the truth.
>
> A licensee is not required to discover latent defects in the property or to advise on matters outside of the scope of the knowledge required for real estate licensure, or to verify the accuracy or completeness of statements made by the seller, unless the licensee is aware of information that should reasonably cause the licensee to question the accuracy or completeness of such statements.

---

4. The trial court also granted summary judgment on the Shannons' contract claim, holding that merger by deed was applicable. However, the merger by deed doctrine does not apply generally when there is evidence of fraud or false representations. *Mong v. Kovach Holdings, LLC*, 11th Dist. Lake No. 2012-T-0063, 2013-Ohio-882, ¶ 22. The trial court also granted summary judgment against the Shannons on their negligence claim based on caveat emptor. "[T]he doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the full and unimpeded opportunity to examine the premises, and (3) there is no evidence of fraud on the part of the vendor." *Layman v. Binns*, 35 Ohio St.3d 176, 178-79 (1988). Thus, given our determination that there are genuine issues of fact regarding the Shannons' fraudulent misrepresentation claim, we also find that the grant of summary judgment regarding the contract and negligence claims was also erroneous.

- 17 -

{¶63} R.C. 4735.68(a) further provides,

A licensee is not liable to any party for false information that the licensee's client provided to the licensee and that the licensee in turn provided to another party in the real estate transaction, unless the licensee had actual knowledge that the information was false or acted with reckless disregard for the truth.

{¶64} The meaning of "reckless disregard for the truth" is not defined in the statute. However, courts have relied upon the definition used within defamation statues, in that "a person acts with reckless disregard for the truth when the person acts with a high degree of awareness of the probable falsity of facts or with serious doubts as to the truth of the statements." *Tanzillo v. Edwards*, 10th Dist. Franklin No. 06AP-383, 2007-Ohio-497, ¶ 16.

{¶65} After reviewing the record, we find that the trial court properly granted summary judgment in favor of Deborah and Keller Williams. The evidence is undisputed that Deborah and Keller Williams did not assist the Fischers in completing the residential disclosure form, and took no part in the decision as to what water intrusion(s) and source(s) would be listed, or not listed, on the form.

{¶66} Deborah testified that she was unaware of additional water or mold problems at the property, and instead, was only informed of the 2014 sump pump flood after it occurred. The evidence is undisputed that Deborah visited the property on a few occasions, but there is no evidence that she was made aware of multiple instances of flooding unrelated to the sump pump or that she knew mold was growing in the basement.

{¶67} Nor have the Shannons indicated specific evidence that Deborah should have been aware of the flooding or mold. Deborah testified that she was informed of the sump pump failure in 2014. However, she was not present in the Fischers' home at the time, and she did not observe the damage caused by the 2014 sump pump incident. Thus, she was not in a position to question whether the sole cause of the flooding was the sump pump as

reported. As such, there are no genuine issues of material fact that Deborah acted with a high degree of awareness that the Fischers' statements were probably false or that she had serious doubts about their statements.

{¶68} Unlike the Fischers, there is no evidence to suggest that Deborah and Keller Williams pumped water out of the home, hired water damage remediation services, removed drywall and baseboards and saw mold, or that they refused service to remediate mold despite being told it was present in the basement.

{¶69} Even so, the Shannons assert that Deborah had a duty to disclose the sump pump failure included on the residential disclosure form when the Fischers purchased the property in 2012. However, the statute requires the agent to disclose material defects, and the sump pump failure Deborah was made aware of in 2012 was not a material defect. *See Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 58 (single sump pump failure resulting in a temporary water accumulation is not a material defect). [5]

{¶70} After reviewing the record and considering each of the Shannons' arguments on appeal, we find that the trial court properly granted summary judgment in favor of Deborah and Keller Williams. The Shannons' second assignment of error is overruled.

{¶71} Judgement affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

M. POWELL, P.J., and PIPER, J., concur.

---

5. For these same reasons, there are no issues of material fact regarding the Shannons' other causes of action including negligence and negligent misrepresentation. In a negligence action, the plaintiff must show (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the duty of care, and (3) as a direct and proximate result of defendant's breach, plaintiff was injured. *Matthews v. Texas Roadhouse Mgt. Corp.*, 12th Dist. Butler No. CA2020-03-037, 2020-Ohio-5229, ¶ 7. However, "although real estate agents owe certain duties to the principals who hire them, no such duties exist between agents of the seller and potential or actual purchasers." *James v. Partin*, 12th Dist. Clermont No. CA2001-11-086, 2002-Ohio-2602, ¶ 20. Thus, the duty owed to the Shannons by Deborah and Keller Williams was statutory and fails for the reasons stated herein specific to the Shannons' statutory arguments.