[Cite as *Pascoe v. Detke*, 2026-Ohio-1971.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MOLLY PASCOE, ET AL.,            :

    Plaintiffs-Appellants,            :

                                  No. 115577

v.            :

ELEANOR DETKE, ET AL.,            :

    Defendants-Appellees.            :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 28, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-989136

---

### *Appearances:*

Ice Miller LLP, Michael B. Pascoe, Robert Port, and Ally Petrillo, *for appellants.*

Susan M. Gray; Thomas C. Loepp, Law Office, Co., LPA, and Thomas C. Loepp; and Anxhela Dalipi, *for appellee* Eleanor Detke.

Marshall Dennehey P.C., and Jillian L. Dinehart, *for appellees* Carolyn Bentley and Howard Hanna Real Estate.

MARY J. BOYLE, J.:

{¶ 1} This appeal involves a dispute arising out of a residential real estate transaction between plaintiffs-appellants Michael Pascoe ("Michael") and Molly Pascoe ("Molly") (collectively the "Pascoes"), and defendants-appellees, Eleanor Detke ("Detke"), Carolyn Bentley ("Bentley"), and Howard Hanna Real Estate ("Howard Hanna"). The Pascoes appeal the trial court's decision granting Detke's and Bentley and Howard Hanna's motions for summary judgment. The Pascoes raise the following three assignments of error for review:

> **Assignment of Error I:** The trial court erred as a matter of law in granting summary judgment in favor of [Detke] based on (i) the doctrine of caveat emptor and (ii) the "as-is" clause in the residential purchase agreement between [the Pascoes] and Detke to preempt [the Pascoes'] fraud claims for which there was substantial evidence to defeat summary judgment.
>
> **Assignment of Error II:** The trial court erred as a matter of law in apply[ing] the doctrine of caveat emptor because of the existence of fraud and the issues complained of are not open and obvious.
>
> **Assignment of Error III:** The trial court erred as a matter of law in finding that there was no evidence to support [the Pascoes'] claims for fraud, concealment, conspiracy, or negligence against Detke, [Bentley,] and [Howard Hanna].

{¶ 2} Because the conditions that the Pascoes complain of were either open and able to be discovered upon reasonable inspection or were otherwise not actionable as a basis for a fraudulent-misrepresentation or inducement claim, we affirm the trial court's decision.

## I. Facts and Procedural History

{¶ 3} On September 3, 2020, the Pascoes entered into an agreement ("agreement") with Detke to purchase a then 108-year-old home located on Lake Avenue in Lakewood, Ohio ("property") for $408,000. Bentley represented Detke with the sale and is an independent contractor of Howard Hanna, the broker. The Pascoes were not represented by a realtor. The property was first listed for sale on February 13, 2020. Detke completed the Residential Property Disclosure Form ("February 2020 Disclosure Form") on February 14, 2020. The February 2020 Disclosure Form states, in pertinent part:

> **C) ROOF:** Do you know of **any previous or current leaks** or other material problem with the roof or rain gutters? x Yes □ No
>
> If "Yes", please describe and indicate any repairs completed (but not longer than the past 5 years): <u>Limb from neighbor['s] tree (to west) fell on roof and needed repair. (2019)</u>
>
> **D) WATER INTRUSION:** . . . Do you know of any water or moisture related damage to floors, walls, or ceiling as a result of . . . leaking pipes[?] □ Yes x No
>
> . . .
>
> **G) MECHANICAL SYSTEMS:** Do you know of any **previous or current** problems or defects with the following existing mechanical systems? . . .
>
> 3) Central heating x Yes □ No
>
> . . .
>
> If the answer . . . is "Yes", please describe and indicate any repairs to the mechanical system (but not longer than the past 5 years): <u>3rd floor units never been used in years being updated now</u>

(Emphasis in original.)  (February 2020 Disclosure Form, p. 2-4.)  At the time this Disclosure Form was completed, Detke indicated she was in the process of repairing the third-floor heating units.  Detke also indicated that the roof was repaired in 2019 because of damage from the neighbor's tree.

{¶ 4}  In July 2020, which was prior to the sale of the property to the Pascoes, Detke had a water leak.  Detke hired Parkway Plumbing ("Parkway") to complete the repair, which was covered by Detke's homeowner insurance.  Prior to entering into the agreement with Detke, the Pascoes were given a copy of a subsequent disclosure form that Detke completed on August 24, 2020 ("August 2020 Disclosure form".  Relevant to this case, the August 2020 Disclosure Form provides:

> **C) ROOF:**  Do you know of **any previous or current leaks** or other material problem with the roof or rain gutters?  □ Yes   x No
>
> If "Yes", please describe and indicate any repairs completed (but not longer than the past 5 years):
>
> _____
> _____
>
> **D) WATER INTRUSION:** . . . Do you know of any water or moisture related damage to floors, walls, or ceiling as a result of . . . leaking pipes[?]  x Yes  □ No
>
> If "Yes", please describe and indicate any repairs completed:  <u>Leak was found in main pipe with a large portion of stack replaced and elbow off it.</u>
>
> . . .
>
> **G) MECHANICAL SYSTEMS:**  Do you know of any **previous or current** problems or defects with the following existing mechanical systems? . . .

3) Central heating  □ Yes   x No

. . .

If "Yes", please describe and indicate any repairs completed (but not longer than the past 5 years):

_____

_____

(Emphasis in original.)  (Aug. 2020 Disclosure Form, p. 2-4.)  The leak Detke referenced in paragraph D of the August 2020 Disclosure Form is the leak from July 2020.  Detke did not reference the previous issues with the central heating or roof from the February 2020 Disclosure Form on this subsequent form.

{¶ 5}  As part of the agreement between Detke and the Pascoes, the Pascoes bought the property in its "'AS IS' PRESENT PHYSICAL CONDITION."  (Sept. 3, 2020 Agreement, p. 1.)  The agreement also contained an "inspection contingency" clause, which permitted the Pascoes to have the home inspected before the purchase was completed.  The Pascoes signed the August 2020 Disclosure Form and acknowledged that "it is BUYER'S own duty to exercise reasonable care to inspect and make diligent inquiry of the SELLER or BUYER'S inspectors regarding the condition and systems of the property." (Sept. 3, 2020 Agreement, p. 3.)

{¶ 6}  On September 15, 2020, the Pascoes had a home inspection completed on the property.  Michael did not attend the home inspection, and Molly sat outside on the porch during the inspection.  The inspection report stated that the house was 108 years old.  The inspector noted that the plumbing system had copper piping for the water supply.  The inspection was of the visible piping and did not

note any leaks in the water supply piping, which was rated "satisfactory." The drain/waste piping was rated "fair" and the report noted that most of the piping was in the walls or floors and was not visible. There was some older cast iron and copper drain piping visible in the basement that required monitoring.

{¶ 7} With regard to the heating system, the report noted that it was a Dunkirk natural gas/hot water system estimated to be 10-15 years old with a design life of 30-40 years. The report noted that the heating system was entirely satisfactory. Additionally, the hot water heater was estimated to be over 25 years old and required monitoring. As to the roof, the report states that the shingles are "very worn" and at the end of "useful service life." The inspector recommended a roofing company review and quote the cost of replacement. After the inspection was completed, Bentley and the Pascoes discussed the roof. The roof was replaced with a complete tear off and replacement of shingles as part of the sale.

{¶ 8} Sometime around January 2022, which was approximately 14 months after the Pascoes took possession of the property, the Pascoes experienced a water leak. According to Michael, after he drained the bathtub on the second floor, water leaked down into the first floor foyer. The Pascoes hired a plumber, who determined that there were leaks in the main stack, which had to be replaced. The stack is the pipe that runs from the basement to the third floor and carries away all water from the home. During this repair, the Pascoes discovered that the central heating system piping was improperly assembled and the installed zone valves were not functioning, which they also repaired.

{¶ 9} In November 2023, the Pascoes filed a lawsuit against Detke, asserting claims for fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, and breach of contract.[1] The Pascoes sought damages for the cost of the repairs. The complaint was later amended in October 2024, and included Bentley and Howard Hanna as defendants. The Pascoes brought the following nine causes of action: Count One — fraudulent inducement against Detke; Count Two — fraudulent misrepresentation against Detke; Count Three — negligent misrepresentation against Detke; Count Four — breach of contract against Detke; Count Five — civil conspiracy against Detke, Bentley, and Howard Hanna; Count Six — breach of R.C. 4735.67(A) against Bentley and Howard Hanna; Count Seven — fraud against Bentley and Howard Hanna; Count Eight — negligent misrepresentation against Bentley and Howard Hanna; Count Nine — respondeat superior against Howard Hanna.

{¶ 10} In the amended complaint, the Pascoes alleged Detke falsely represented that a large portion of the main stack was replaced. Acknowledging that the word "large" is subjective, the Pascoes contend that of the entire stack, which runs from the basement through the third floor, "only approximately three to four feet of the stack had been replaced." (Amended complaint, Oct. 16, 2024.) According to the Pascoes, Detke also falsely represented that there was one leak on a single occasion. Rather, they alleged that there were multiple leaks on three

---

[1] We note that throughout the proceedings in the trial court and on appeal, Michael, an attorney, was one of the attorneys representing himself and Molly.

separate floors over a period of several days. The Pascoes claimed that while they had the property inspected, the inspection report did not discover and could not have discovered the material, latent defects with the stack.

{¶ 11} As a result of the January 2022 water leak, the Pascoes alleged that they had to undertake investigative demolition into the wall where the stack was located. This investigation revealed water damage inside the walls. The investigative demolition also revealed a crack in part of the stack that had been caulked over with silicon, which the Pascoes contended demonstrated that Detke: (1) was aware of a defect in the pipe; (2) had engaged in "slipshod repairs" in violation of the relevant codes; and (3) had not disclosed the defect in the pipe. According to the Pascoes, they engaged in further work and found numerous code violations related to wiring and plumbing. Ultimately, the Pascoes replaced the entire stack and drain lines. The Pascoes allege that the cost of the replacement and attendant work was in excess of $12,000.

{¶ 12} The Pascoes further alleged that during this repair work, they became aware of an issue with the central heating system. Specifically, the central heating system would improperly call for heat across the system when any one location that was wired into the system was activated. According to the Pascoes, they were required to install regulators into the heating system to address the improper wiring and individual smart thermostats to address the issue for a cost in excess of $5,000 and were required to repipe the boiler and hot water heater at a cost in excess of

$4,000. The Pascoes maintained that they were also required to replace the boiler at only half of its expected life because of the improper piping and zone-valve issues.

{¶ 13} The Pascoes additionally alleged that Detke failed to disclose the fallen-branch issue with the roof on the August 2020 Disclosure Form even though she disclosed it on the February 2020 Disclosure Form. The Pascoes claimed that they relied upon and believed Detke's representations in the August 2020 Disclosure Form when purchasing the property. And as a result of Detke's representations, they have been damaged in an amount not less than $115,000.

{¶ 14} With regard to Bentley, the Pascoes alleged that they discovered the February 2020 Disclosure Form, which disclosed material defects that were not listed on the disclosure form provided to them in August 2020. According to the Pascoes, Bentley was aware of the February 2020 Disclosure Form, was aware of the defects disclosed on that form that listed material defects in the central heating system and the structural integrity of the roof of the property, and did not provide a copy of that form to them at any time prior to the sale of the property. Specifically, the Pascoes alleged that a February 14, 2020 text-exchange between Detke and Bentley reveals that Detke stated to Bentley it was cold that day and "the heat was not sufficient" for the house. (Amended complaint, Oct. 16, 2024.) Detke inquired about rescheduling "the showings until Monday when it would be 40 degrees, and the issue would be 'less noticeable.'" (Amended complaint, Oct. 16, 2024.) "Bentley responded that the rescheduling for Monday was fine as long as Sunday would also be reasonably comfortable so there were two days of reasonably comfortable

temperature, and the house could adjust." (Amended complaint, Oct. 16, 2024.) The Pascoes alleged that Bentley conspired with Detke to conceal the defects from potential purchasers.

{¶ 15} The Pascoes further alleged that they were aware of a prior failed sale and when they asked Bentley about the cause of the failed sale, Bentley concealed that a failed property inspection was the true cause of the failed sale and that the leak in the stack was extensive. According to the Pascoes, Bentley replied that "the husband was out of town and that after he saw the [p]roperty he did not find it suitable and so he intentionally cratered the sale." (Amended complaint, Oct. 16, 2024.) As an employee and agent of Howard Hanna, the Pascoes alleged that Howard Hanna is liable for all of Bentley's acts and omissions. Additionally, the Pascoes alleged that in the furtherance of Detke's fraud, Bentley and Howard Hanna violated their statutory duties under R.C. 4735.67(A) to disclose any material defects in the property.[2] According to the Pascoes, Bentley was entitled to the full commission of $18,125 for the sale because they did not have a real estate agent.

{¶ 16} The Pascoes sought a recission of the agreement; full refund of all amounts invested in improvement of the property, interest on mortgage loans, property taxes, and all other recission damages they are entitled to under law, as well as compensatory damages in excess of $25,000; noneconomic damages up to the statutory threshold of $500,000; punitive damages against Detke for the lesser

---

[2] R.C. 4735.67(A) governs a licensee's duty to disclose to purchasers.

of 10% of her net worth or the two times compensatory damages cap; punitive damages against Bentley for the lesser of 10 percent of her net worth or the two times compensatory damages cap; punitive damages against Howard Hanna for an amount to be proven at trial; attorney fees, costs, and expenses; and disgorgement of all profit.

{¶ 17} The matter proceeded with extensive discovery, culminating with the filings of respective motions for summary judgment by the Pascoes, Detke, and Bentley and Howard Hanna.[3]  In September 2025, the trial court, considering all the evidence and construing it in a light most favorable to the nonmoving party, found that Detke and Bentley and Howard Hanna are entitled to judgment as a matter of law and denied the Pascoes' motion for partial summary judgment.  In reaching its decision, the court stated:

> The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor. *Layman v. Binns*, 35 Ohio St.3d 176, 519 N.E.2d 642 (1988). In general, the caveat emptor doctrine governs the obligation of sellers to disclose information in real estate transactions and precludes any reliance on certain misrepresentations made by a seller or seller's agent concerning the condition of that property. *Schmiedebusch v. Rako Realty, Inc.*, 2005-Ohio-4884, ¶ 19 (5th Dist.).
>
> In Ohio, the seller has no duty to disclose latent defects if a purchase agreement states that the buyer purchases real property in its "as is" physical condition. *Neiberding v. Barrant*, 2021-Ohio-2593, ¶ 44 (8th

---

[3] We note that in October 2024, Detke filed a third-party complaint against Parkway for indemnification and contribution.  Detke hired Parkway to fix the July 2020 leak before she sold the property to the Pascoes.  Parkway filed its own motion for summary judgment, which the court denied as moot.  Parkway is not a part of this appeal.

Dist.), citing *Eiland v. Coldwell Banker Hunter Realty*, 122 Ohio App.3d. 446, 457, 702 N.E.2d 116(1997).

> The purchase agreement in this matter contained an "as is" clause. [The Pascoes] agreed to purchase the property after having opportunities to inspect the property, having a home inspection completed, agreeing to a roof replacement, and negotiating the price of the property. The court finds that [the Pascoes] have failed to present evidence that [Detke, Bentley, and Howard Hanna] knew of and/or concealed any of the alleged defects. The court further finds no evidence of fraud, concealment, conspiracy, or negligence against any of the named defendants in this matter. As such, [Detke, Bentley, and Howard Hanna] are entitled to judgment as a matter of law on all of [the Pascoes]' claims and summary judgment is proper under Civ.R. 56(C).

(Journal entry, Sept. 12, 2025.)

{¶ 18} It is from this order that the Pascoes appeal, raising three assignments of error for review.

## II. Law and Analysis

{¶ 19} Within their assigned errors, the Pascoes challenge the trial court's grant of defendants' respective motions for summary judgment on the following three bases: (1) the trial court erred by applying the "as is" clause because this clause does not apply to fraud claims; (2) the trial court erred in its application of the doctrine of caveat emptor because this doctrine also does not apply to fraud claims; and (3) the trial court erred in finding there was "no evidence" to support the Pascoes' claims. We note that with the first two bases, the Pascoes only challenge the trial court's ruling on their fraudulent-inducement and fraudulent-misrepresentation claims against Detke. And for their third basis, the Pascoes challenge the trial court's ruling on their breach-of-contract and civil-conspiracy

claims against Detke, their fraud, civil-conspiracy, and R.C. 4735.67(A) claims against Bentley, and their respondeat superior claims against Howard Hanna.

## A. Summary Judgment Standard of Review

{¶ 20} An appellate court reviews the grant or denial of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). In a de novo review, this court affords no deference to the trial court's decision and independently reviews the record to determine whether the denial of summary judgment is appropriate. *Hollins v. Shaffer*, 2009-Ohio-2136, ¶ 12 (8th Dist.).

{¶ 21} Summary judgment is appropriate if (1) no genuine issue of any material fact remains; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Id.*, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217 (1994).

{¶ 22} The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party must then point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. Trial courts should award summary judgment only after resolving all doubts in favor of the nonmoving

party and finding that "'reasonable minds can reach only an adverse conclusion'" against the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992), quoting *Norris v. Ohio Std. Oil Co.*, 70 Ohio St.2d 1, 2 (1982).

## B. Fraudulent Misrepresentation and Fraudulent Inducement

{¶ 23} Here, the Pascoes claimed fraudulent misrepresentation and fraudulent inducement against Detke. The elements of fraudulent misrepresentation are:

> "(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." *Cardi v. Gump* (1997), 121 Ohio App.3d 16, 22, 698 N.E.2d 1018, citing *Schlecht v. Helton* (Jan. 16, 1997), 8th Dist. No. 70582, 1997 Ohio App. LEXIS 114.

*Pedone v. DeMarchi*, 2007-Ohio-6809, ¶ 28 (8th Dist.).

{¶ 24} This court has stated that "[t]he elements of fraudulent inducement are essentially the same as those for fraudulent misrepresentation, fraudulent concealment, and fraudulent nondisclosure." *Id.* at ¶ 29, citing *Information Leasing Corp. v. Chambers*, 2003-Ohio-2670, ¶ 84 (1st Dist.) Therefore, the Pascoes' fraudulent-inducement and fraudulent-misrepresentation claims as treated as one. *Cantlin v. Smythe Cramer Co.*, 2018-Ohio-4607, ¶ 37 (8th Dist.) (where this court relied on *Pedone* and treated plaintiffs fraud and fraudulent inducement claims as one).

{¶ 25} We note that "[a]n action for fraud may be grounded upon failure to fully disclose facts of a material nature where there exists a duty to speak." *Layman*, 35 Ohio St.3d 176, 178 (1988). "Buyers are protected by law against 'being misled by others into making unwise decisions which result in financial loss' when sellers fail to 'fully disclose' material facts." *Avila v. Hughes*, 2021-Ohio-2463, ¶ 36 (12th Dist.), quoting *Miles v. McSwegin*, 58 Ohio St.2d 97, 99-100 (1979). Furthermore, "a party is under a duty to speak, and therefore liable for nondisclosure if the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another party to act or refrain from acting, and the non-disclosing party knows that the failure to disclose such information to the other party will render a prior statement or representation untrue or misleading." *Miles* at 100, citing 3 Restatement of the Law 2d, Torts, 119, § 551, Subsections (1 and 2); *see also Armbruster v. Mason*, 1982 Ohio App. LEXIS 14819, *11-12 (5th Dist. July 20, 1982); *Avila* at ¶ 37; and *Shannon v. Fischer*, 2020-Ohio-5567, ¶ 17 (12th Dist.).

**C. R.C. 5302.30**

{¶ 26} R.C. 5302.30 establishes a circumstance in which a seller of residential real estate has a duty to speak. In *Ashmus v. Coughlin*, 2025-Ohio-2412, the Ohio Supreme Court recently analyzed the disclosure requirement of R.C. 5302.30. The *Ashmus* Court stated that Ohio's residential property disclosure "form is designed to allow sellers 'to disclose material matters relating to the physical condition of the property to be transferred.'" *Id.* at ¶ 15, quoting R.C. 5302.30(D)(1). These include "the condition of the structure of the property,

including the roof, foundation, walls, and floors," and "any material defects in the property that are within the actual knowledge of the transferor." R.C. 5302.30(D)(1). This court has stated that "material defects" are those that are "dangerous to anyone occupying the property and that inhibited the occupant's use of the property." *Nieberding v. Barrante*, 2021-Ohio-2593, ¶ 35 (8th Dist.).

{¶ 27} The statute further requires that "[e]ach disclosure of an item of information that is required to be made in the property disclosure form . . . and each act that may be performed in making any disclosure of an item of information shall be made or performed in good faith." R.C. 5302.30(E)(1). R.C. 5302.30(A)(1) defines "good faith" as "honesty in fact in a transaction involving the transfer of residential real property." If the seller fails to disclose a material fact on the form with the intent to mislead the buyer, and the buyer relies on the form, the seller may be liable for any resulting injury. *Nieberding* at ¶ 23, citing *Pedone*, 2007-Ohio-6809, ¶ 31 (8th Dist.). But where the buyer "has had the opportunity to inspect the property, he is charged with knowledge of the conditions that a reasonable inspection would have disclosed." *Id.*, quoting *Nunez v. J.L. Sims Co., Inc.*, 2003-Ohio-3386, ¶ 17 (1st Dist.).

{¶ 28} "Sellers of residential real property have no duty to inspect their property or to otherwise acquire additional knowledge regarding defects on their property." *Kess v. Khan*, 2023-Ohio-2773, ¶ 31 (8th Dist.), citing *Roberts v. McCoy*, 2017-Ohio-1329, ¶ 17 (12th Dist.). "'[T]he duty to conduct a full inspection falls on

the purchasers[,] and the disclosure form does not function as a substitute for such careful inspection.'" *Nieberding* at ¶ 23, quoting *Roberts* at ¶ 17.

{¶ 29} The *Ashmus* Court further stated that while R.C. 5302.30 "modifies the common-law duty of disclosure in certain respects," this statute "does not create an independent cause of action[.]" *Id.*, 2025-Ohio-2412 at ¶ 17. For this reason, "a buyer's remedy for nondisclosure is limited to common-law claims for fraud." *Id.*, citing *Majoy v. Hord*, 2004-Ohio-2049, ¶ 17 (6th Dist.).

> Historically, unless a purchase agreement contained an "as is" clause, sellers of real property were required to disclose latent defects, i.e., hidden defects, of which they were aware. *See, e.g., Layman v. Binns*, 35 Ohio St.3d 176, 178, 519 N.E.2d 642 (1988). But under the doctrine of caveat emptor, they were not required to disclose patent defects, that is, defects that would be readily observable through a reasonable inspection. *Id.* at 177-178.

*Ashmus* at ¶ 18. Thus, the "enactment of R.C. 5302.30 modified the seller's duty by requiring disclosure of not only known latent defects but also known patent defects" within their actual knowledge. *Id.* at ¶ 19, citing R.C. 5302.30(D)(1); *see also Williams v. D&J House Doctors., LLC*, 2025-Ohio-4716, ¶ 23 (3d Dist.).

{¶ 30} Finally, "R.C. 5302.30(D)(1) provides that the disclosure form is 'not a warranty of any kind by the transferor,' nor is it 'a substitute for any inspections.'" *Id.* Thus, "[t]he duty under the statute to conduct a full inspection falls upon the buyer, not the seller." *Pedone*, 2007-Ohio-6809, at ¶ 32 (8th Dist.), citing *Clark v. Allen*, 2003-Ohio-4617 (12th Dist.). "[W]here the buyer 'has had the opportunity to inspect the property, he is charged with knowledge of the conditions that a reasonable inspection would have disclosed.'" *Nieberding*, 2021-Ohio-2593, at ¶ 23

(8th Dist.), quoting *Nunez*, 2003-Ohio-3386, at ¶ 17 (1st Dist.).  Here, the August

2020 Disclosure Form that the Pascoes completed specifically provides in

capitalized lettering:

> THIS FORM IS NOT A WARRANTY OF ANY KIND BY THE OWNER OR BY ANY AGENT OR SUBAGENT REPRESENTING THE OWNER. THIS FORM IS NOT A SUBSTITUTE FOR ANY INSPECTIONS. **POTENTIAL PURCHASERS ARE ENCOURAGED TO OBTAIN THEIR OWN PROFESSIONAL INSPECTION(S).**

(Emphasis in original.)  (August 2020 Disclosure Form.)

### D. Caveat Emptor and the "As is" Clause

{¶ 31}  As stated above, the doctrine of caveat emptor limits the potential

liability of sellers of residential property.  Under this doctrine, a purchaser is

precluded from recovering for a structural defect where:

> (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor.

*Layman*, 35 Ohio St.3d 176 (1988), syllabus, approving and following *Traverse v.*

*Long*, 165 Ohio St. 249 (1956).  "'A defect is observable or discoverable if an

ordinarily prudent person would discover it upon reasonable inspection.'" *Roberts*,

2017-Ohio-1329 at ¶ 12 (12th Dist.), quoting *Moravek v. Hornsby*, 1997 Ohio App.

LEXIS 3032, *6 (12th Dist. July 14, 1997).  As the *Ashmus* Court stated, "[U]nder

the doctrine of caveat emptor, a seller of residential property has a duty to disclose

latent (or hidden) defects but not patent (or readily discoverable) defects."  *Id.*,

2025-Ohio-2412, at ¶ 31.  A latent defect has been defined as "'[o]ne which could

not be discovered by reasonable or customary observation.'  Black's Law Dictionary

(6th Ed.1991) 611." *Lone Star Steakhouse Saloon of Ohio v. Quaranta*, 2002-Ohio-1540, ¶ 18 (7th Dist.). "The nature of the defect and the ability of the parties to determine through a reasonable inspection that a defect exists are key to determining whether or not the defect is latent." *Siebert v. Lalich*, 2006-Ohio-6274, ¶ 34 (8th Dist.), citing *Miles*, 58 Ohio St.2d 97, 101 (1979).

{¶ 32} Furthermore, the doctrine of caveat emptor "is designed to finalize real estate transactions by the preventing disappointed real estate buyers from litigating every imperfection existing in residential property." *Nieberding*, 2021-Ohio-2593, at ¶ 30 (8th Dist.), quoting *Thaler v. Zovko*, 2008-Ohio-6881, ¶ 31 (11th Dist.). But "a seller may still be liable to a buyer if the seller fails to disclose known latent conditions." *Morgan v. Cohen*, 2019-Ohio-3662, ¶ 35 (8th Dist.).

{¶ 33} In this case, the agreement provided that the property was being sold in its "'as is' present physical condition," subject to a general home inspection. When a purchase agreement states that the property is being sold "as is," the buyer "agrees to make his or her own appraisal of the bargain and accept the risk that he or she may be wrong." *McDonald v. JP Dev. Group, L.L.C.*, 2013-Ohio-3914, ¶ 15 (8th Dist.), citing *Kern v. Buehrer*, 2012-Ohio-4057 (8th Dist.), citing *Tipton v. Nuzum*, 84 Ohio App.3d 33 (9th 1992); *see also Nieberding*, 2021-Ohio-2593, at ¶ 33 (8th Dist.). "An 'as is' clause in a real estate purchase agreement bars suit for passive non-disclosure, but does not protect a seller from action alleging positive misrepresentation or concealment." *Pedone*, 2007-Ohio-6809, at ¶ 34 (8th Dist.), citing *Vecchio v. Kehn*, 1994 Ohio App. LEXIS 3622, *8-9 (8th Dist. Aug. 18, 1994).

{¶ 34} "However, neither the doctrine of caveat emptor nor the presence of an 'as is' clause forecloses a buyer from recovery when the seller has perpetrated a fraud." *Jones v. Gilbert*, 2023-Ohio-754, ¶ 13 (3d Dist.), citing *Buchanan v. Improved Properties*, 2014-Ohio-263, ¶ 14 (3d Dist.); *Lapos Constr. Co. v. Leslie*, 2006-Ohio-5812, ¶ 14 (9th Dist.); *Donnelly v. Taylor*, 2003-Ohio-729, ¶ 16 (9th Dist.). The seller is not protected "from liability for 'positive' acts of fraud, i.e., "'a fraud of commission rather than omission,'" such as fraudulent misrepresentation or fraudulent concealment, including fraudulent misrepresentations in [a residential property disclosure form]." *Morgan* at ¶ 39, quoting *Brown* at ¶ 20, quoting *Majoy*, 2004-Ohio-2049, ¶ 18 (6th Dist.).

### E. No Latent Defects in the 108-Year Old Home

{¶ 35} Keeping these legal principles in mind, we now turn to the Pascoes' arguments. The crux of Pascoes' fraud claims is the difference in information between the February 2020 Disclosure Form and the August 2020 Disclosure Form. The Pascoes acknowledge that the agreement contains an "as is" clause and the application of caveat emptor. They contend, however, that neither caveat emptor or the "as is" clause shield Detke from fraud because they established that a genuine issue of material fact exists as to whether Detke knew about or concealed the conditions at issue in this case. In support of their argument, they allege three instances of affirmative misrepresentations by Detke on the August 2020 Disclosure Form regarding the extent of the damage to the stack (plumbing), the failure to

disclose the structural damage to the roof from 2019, and the issue with the third-floor heat.  We discuss the alleged defects in turn.

### 1.  Third-Floor Heat

{¶ 36} With regard to the heat, the Pascoes note that on the February 2020 Disclosure Form, Detke checked the "yes" box indicating a problem or defect in the heating system.  Detke explained, "3rd floor units never been used in years being updated now[.]"  (February 2020 Disclosure Form.)  Whereas on the August 2020 Disclosure Form, Detke checked the "no" box, which the Pascoes contend is evidence that Detke affirmatively misrepresented that there was no defect in the heating system.

{¶ 37} In support of their fraudulent misrepresentation and inducement claims against Detke, the Pascoes rely on the February 2020 text exchange where Detke stated to Bentley that the heat was "definitely not up to par" and "[s]hould I tell them to come tomorrow or can it wait till Monday.  It will be 40 and less noticeable."  Bentley replied, "Monday is fine as long as it will be reasonably comfortable Sunday."  The Pascoes argue that this text exchange is evidence that Detke concealed or otherwise failed to disclose the problems in the subsequent August 2020 Disclosure Form.

{¶ 38} According to Detke, the third floor has two bedrooms that have "in-wall units that provide heat[.]"  (Detke depo., p. 19.)  In addition, Detke did not experience any overheating issues with the third floor because "[she did not] ever go up there.  At this point [her] children were out of the house.  [She is] living in a five-

bedroom house by [her]self." (Detke depo., p. 32.) And although there was a text exchange stating that the heat was "not up to par," both Detke and Bentley explained the context of the exchange. Bentley stated that texts occurred on the day she got the February 2020 Disclosure Form from Detke and based on Detke's statement in this disclosure form that repairs were pending, Bentley believed that the heat issue was only with the third-floor space heaters and that issue was repaired. At her deposition, Bentley testified, "My understanding at the time was that we were discussing the third floor unit, space heater . . . what I did not believe was part of the central heating system to the home, and that that was in the process of being repaired." (Bentley depo., p. 99-100.) Their text exchange revealed that showings continued throughout the week, regardless of the heat being "not up to par," with an open house and a broker's open.

{¶ 39} At Detke's deposition, she testified that the text exchange with Bentley was not a conspiracy to avoid scheduling showings because it was too cold and "the heating system wasn't up to par." Detke explained that she and Bentley "told those people that those items are being worked on, and when [the Pascoes] purchased the house, the work was totally finished." (Detke depo., p. 25-26.) When asked if she would intentionally mislead buyers about issues with the heating system in the house, Detke replied, "[n]o." (Detke depo., p. 22.) According to Detke, if something was wrong with the house, she would have definitely told the prospective buyer and would have had it fixed before the buyer moved in.

{¶ 40} Detke acknowledged that she did not disclose that "the heat was not up to par" on the August 2020 Disclosure Form, stating that she "was very laxed in filling out all the little particulars" and "didn't think" she "needed to." (Detke depo, p. 127-128.) Detke stated, "I'm bad for not doing that. That I do agree with." (Detke depo., p. 129.) She explained, "The reason I didn't check it is because everything was okay then, and I guess when I filled this out, you know, I . . . filled out what I thought were the most important things, and I guess . . . current or previous problems, it didn't seem like a big previous problem since it was fixed." (Detke, depo., p. 128-129.)

{¶ 41} We find that the Pascoes' argument is unpersuasive because any issue with the third-floor heat was an open-and-observable condition. Even if Detke and Bentley knew the heat was not working, there was no evidence that the Pascoes' inspector was prevented from inspecting the heat and therefore the defect was open or discoverable upon reasonable inspection. Indeed, it is undisputed that the Pascoes had the home inspected by an inspector of their choosing and that the inspector had an unimpeded opportunity to examine the premises, including the third-floor. The inspection report indicated that the heating system was entirely satisfactory after calling for heat. The report noted that it was a Dunkirk natural gas/hot water system estimated to be 10-15 years old with a design life of 30-40 years. When Michael was asked at his deposition how he knew that the third-floor heaters were not working at the time they purchased the home, Michael replied, "I don't." (Michael depo., p. 226.) Additionally, the record is clear that the Pascoes

lived in the house for approximately 14 months without incident. The Pascoes lived in the house through four seasons without an issue with the heat. It was not until after the demolition work started for the water leak from the bathroom that the Pascoes discovered the issue with the heat on the third floor.

{¶ 42} The Pascoes opposed Detke's summary judgment, relying on Michael's declarations that this was not an open-or-obvious defect that could be discovered merely by turning on the heat when they purchased the home in September and the defect in the heating system was because of improper piping and zone valve malfunctions. Michael's declarations, however, are insufficient to create a genuine issue of material fact. We agree with Detke in that there is no admissible evidence of "improper piping and zone valve malfunctions" because the declarations were based on hearsay, were not made on personal knowledge, and are not permitted under Civ.R. 56(E). In further support of their argument, the Pascoes also contend that Detke's previous contractor informed her in 2010 that the zone valves were not functioning properly at that time and needed to be repaired, but Detke never did. We likewise cannot consider this evidence because this is hearsay and was not properly authenticated by the Pascoes.

{¶ 43} Because it is undisputed that the Pascoes and their inspector had the unimpeded opportunity to inspect the heat, including on the third floor, any alleged defect with the heat would have been open and discoverable. It is also undisputed that the Pascoes lived in the home for 14 months, including the winter months in 2020 and 2021, before any alleged issue with the heat was discovered in January

2022. There is no evidence establishing that the alleged issue with the heat from ten years prior was latent or could not be found in a reasonably diligent inspection. Furthermore, the Pascoes cannot not prove fraud in these circumstances because there is no evidence in the record suggesting that Detke was aware of the alleged "malfunctioning zone valves" or that her omission of the third-floor heat not being "up to par" on the August 2020 Disclosure Form was made with disregard or recklessness as to its truth or falsity. Therefore, caveat emptor bars the Pascoes' fraud claims regarding the third-floor heat.

**2. Roof**

{¶ 44} Second, the Pascoes contend Detke made an affirmative misrepresentation regarding the condition of the roof. On the February 2020 Disclosure Form, Detke indicated there was a problem with the roof, explaining that a "[l]imb from neighbor['s] tree (to west) fell on roof and needed repair. (2019)[.]" But on the August 2020 Disclosure Form, Detke checked the "no" box. According to Michael, there was leak in the bedroom where the branch fell on the roof, which was not discovered by the home inspection.

{¶ 45} Detke testified that in 2019, the neighbor's "tree limb fell on the roof above the bathroom upstairs." (Detke depo., p. 173.) Detke disclosed this on the February 2020 Disclosure Form and acknowledged that she omitted the 2019 roof damage on the August 2020 Disclosure Form. According to Detke, she "forgot to bring some things over" from the February form to the August Form. (Detke depo., p. 222.)

{¶ 46} Here, the undisputed facts demonstrate that the Pascoes' home inspector stated that the shingles were "very worn" and at the end of "useful service life." The inspector recommended a roofing company review and quote the cost of replacement. The report further noted that "[a]ny roof defect can result in leakage[.]" (Inspection report, p. 6.) Ultimately, Detke replaced the roof with a complete tear off and replacement of shingles as part of the sale. (Michael's depo. p. 211.) Additionally, according to the Pascoes, they first noticed the leak sometime around March 2024, which was more than three years after they purchased the home. Michael testified that the only reason he believed that there was structural damage to the roof was because "roofs and ceilings that don't have a problem with them don't leak." (Michael's depo., p. 217.) When asked if it the problem could be from the shingles, Michael replied, "I guess. I don't know. They are brand new. There's a warranty." (Michael's depo., p. 217-218.) He further agreed that construction defects do happen. Michael submitted a warranty claim for the roof but he had not heard anything from them for "at least a year" and only followed up with the company once. (Michael depo., p. 218.)

{¶ 47} While Detke knew about the 2019 roof damage and omitted it from the August 2020 Disclosure Form, there was no evidence that the inspector was prevented from inspecting the roof and thus the defect was open or discoverable upon reasonable inspection. At the time of inspection, no leaks were observed, but the inspector discovered an issue with the age of the roof and condition of the shingles. As part of the negotiations to finalize, Detke installed new roof installed

prior to the Pascoes moving into the home. Because the Pascoes were alerted of the roof's condition and a tear off and replacement was completed before they moved into the home, their claim in this regard is barred by caveat emptor. The Pascoes cannot not prove fraud in these circumstances because they cannot claim to have justifiably relied on the August 2020 Disclosure Form when they were actually aware of the roof's condition. Other than assumptions, the Pascoes have failed to demonstrate that the March 2024 leak in the bedroom was associated with the 2019 roof damage Detke disclosed in February 2020, which was prior to the installation of the new roof.

### 3. The Stack

{¶ 48} Lastly, the Pascoes contend Detke only partially disclosed the extent of the water leak on the August 2020 Disclosure Form. Relying on an invoice by the plumbing company Detke hired to repair the leak, they contend that there were three leaks relating to the main stack on three different floors, not just the replacement of a large portion of the stack as Detke disclosed. The plumbing company's invoice indicated that the lead boot under the second-floor toilet was rotted out and was repaired, the third-floor toilet was leaking at the flange and was repaired, and they repaired a four-inch "crack" in the main stack.

{¶ 49} In this case, the Pascoes first noticed a water leak in January 2022, which was over 14 months after they purchased the home. According to Michael, after he drained the bathtub on the second floor, water leaked down into the first-floor foyer. Michael contacted his insurance agent, plumber Ken Sapp ("Sapp"), and

general contractor to investigate in assess the issue. Sapp testified that he has done plumbing work for Michael for a number of years. When he received a call from Michael, it was about water damage and a bad smell in the home. Sapp stated that sewer gas smells were not unusual from stacks in 100 year old houses and determined that the smell was sewer gas emanating from cracks in the stack. He recommended replacing the entire stack. Demolition work had to be completed in order to expose the stack. Once the stack was exposed, he noticed that there were cracks in the stack and part of the stack had been repaired with caulk, but he could not tell when that repair occurred or how long the stack had been cracked. He further testified regarding the July 2020 plumbing work by Detke's plumber, stating that he did not observe any issues with that work or any leaks from the area of those repairs.

{¶ 50} Detke testified that she had a leak in a storage room that she turned into a wine cellar in the basement in July 2020. She was still under contract with the previous potential buyers at this time. She described it as "water coming down the wall[.]" (Detke depo., p. 51.) She claimed the leak on her insurance and hired Parkway to complete the repairs. When asked what was her understanding of how much of the stack was replaced, Detke responded, "A large portion in the bathroom from the floor to the ceiling was open, so to me, that was a large area, and that's the amount that was replaced in there." (Detke depo. p. 136.) According to Detke, a new flange and elbow were installed and tied back into main stack. Detke did not remember the plumber telling her to leave the walls open for several weeks to make

sure the repair worked, but she did leave the area for a few weeks because that was "how long it took for people come out and do it." (Detke depo., p. 154.) As to the other leaks on the invoice, Detke did not "remember that there were three separate incidents. [She] just remember[ed the plumber] was coming and going and it was getting done[.]" (Detke depo., p. 192.) Detke was not aware of any silicon or caulk repairs completed on the stack.

{¶ 51} Here, there is no dispute that the house was over 100 years old, at the time of purchase, and contained the kind of plumbing that one would expect to see in a home of its age. It is also undisputed that the age and condition of the stack had been disclosed in the home inspection. The Pascoes' inspector warned them that there was some older cast iron and copper drain piping visible in the basement that required monitoring. Even Michael acknowledged that "stacks are a significant issue[ ] in houses that are older than 100 years" stating, "I think that that is a true statement[.]" (Michael depo., p. 246.) After reading the August 2020 Disclosure Form and the inspection report, Michael did not ask Detke any questions about the repair, despite understanding that at 100 years old, the stack was "near the end" of its useful life. (Michael depo., p. 221.) Furthermore, there is no evidence that Detke's July 2020 repairs to the stack were unsuccessful or the source of the alleged leak. Nor is there any evidence that Detke hid the extent of the repair from the Pascoes. The Pascoes complain about a leak that occurred 14 months after they moved into the home. This was not a latent defect. Rather, it was discovered upon reasonable inspection when the inspector alerted the Pascoes to monitor the stack,

which was near the end of its useful life. Caveat emptor bars the Pascoes' claim with respect to the stack. The Pascoes' fraud claims fail because there is no evidence suggesting that Detke's disclosure regarding the stack was false or made with disregard or recklessness as to its truth or falsity.

{¶ 52} Under these facts, we find that Detke met her burden of demonstrating that no material issues of fact exist for trial. We agree with the trial court in that the doctrine of caveat emptor precludes recovery. The alleged defects with the roof, heat, and stack were either open and able to be discovered upon reasonable inspection or were otherwise not actionable as a basis for their fraud claims. The home inspection report actually alerted the Pascoes to monitor the stack and obtain a quote on a roof replacement. Additionally, we agree with the trial court in that the "as is" clause bars recovery. The Pascoes agreed to purchase the property after having the opportunity to personally inspect the property, having a home inspection completed, agreeing to a roof replacement, and negotiating the price of the property.

{¶ 53} As the nonmoving party, the Pascoes failed to present evidence demonstrating the existence of a genuine issue of material fact. There is no evidence that the alleged defects were latent, Detke knew of these latent defects, and concealed them with such utter disregard and recklessness as to whether it is true or false, or that they justifiably relied on Detke's representations. Therefore, we find that Detke is entitled to judgment as a matter of law on the Pascoes' fraud claims,

and even when construing the evidence most strongly in favor of the Pascoes, reasonable minds can come to but one conclusion in favor of Detke.

{¶ 54} The first and second assignments of error are overruled.

### F. No Evidence to Support Breach of Contract, R.C. 4735.67(A), Civil Conspiracy, Fraud, and Respondeat Superior Claims

{¶ 55} Within their third basis, the Pascoes argue that the trial court erred in granting summary judgment because they provided sufficient evidence to raise questions of material fact on the following claims:  breach of contract against Detke, civil conspiracy against Detke and Bentley, R.C. 4735.67(A) violations and fraud against Bentley, and respondeat superior against Howard Hanna.  We discuss each claim in turn

### 1. Breach of Contract

{¶ 56} We note that while the Pascoes raise error with the trial court's grant of summary judgment on breach-of-contract claim, the Pascoes fail to cite to any authority in support of their contention.  App.R. 16(A)(7) requires an appellant to include within his brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."  And under App.R. 12(A)(2), an appellate court may decline to address an assignment of error if an appellant fails to cite any legal authority to support his argument.  Because the appellant, rather than the appellate court, bears the burden to construct the necessary legal arguments that support the

designated assignments of error, we decline to address this argument. *Walsh v. Walsh*, 2023-Ohio-1675, ¶ 10, citing *Doe v. Cuyahoga Cty. Community College*, 2022-Ohio-527, ¶ 26 (8th Dist.), citing *Taylor-Stephens v. Rite Aid of Ohio*, 2018-Ohio-4714, ¶ 121 (8th Dist.).

### 2. R.C. 4735.67(A)

{¶ 57} Next, the Pascoes argue the court erred in granting summary judgment on their R.C. 4735.67(A) claim against Bentley. The Pascoes contend that Bentley knew the heat was not working properly and thus violated her statutory obligation not disclosing this to them. R.C. 4735.67(A) provides:

> A licensee shall disclose to any purchaser all material facts of which the licensee has actual knowledge pertaining to the physical condition of the property that the purchaser would not discover by a reasonably diligent inspection, including material defects in the property, environmental contamination, and information that any statute or rule requires be disclosed. For purposes of this division, actual knowledge of such material facts shall be inferred to the licensee if the licensee acts with reckless disregard for the truth.

In conjunction with subsection (A), R.C. 4735.67(B) provides:

> A licensee is not required to discover latent defects in the property or to advise on matters outside of the scope of the knowledge required for real estate licensure, or to verify the accuracy or completeness of statements made by the seller, unless the licensee is aware of information that should reasonably cause the licensee to question the accuracy or completeness of such statements.

{¶ 58} Thus, to prevail on this claim, the Pascoes must prove that the alleged heating issue was material, Bentley had actual knowledge of the heating issue, and that the issue could not be discovered by a reasonably diligent inspection. We note that under R.C. 4735.67(B), Bentley was not required to verify the accuracy of

Detke's statements, unless she was aware of information causing Bentley to question the accuracy of such statements.

{¶ 59} Here, the only evidence that Bentley was aware that there was a heating issue in the home was from Bentley's text exchange with Detke, who stated that the heat was not "up to par" and come back when it would be 40 degrees paired with the February 2020 Disclosure Form that referenced third-floor units as not having been used in years with repairs pending. However, based on Detke's statement in the February 2020 Disclosure Form that repairs were pending, Bentley believed that the heat issue was only with the third-floor space heaters and that the issue was repaired. Bentley testified, "My understanding at the time was that we were discussing the third floor unit, space heater . . . what I did not believe was part of the central heating system to the home, and that that was in the process of being repaired." (Bentley depo., p. 99-100.) Bentley was "operating under the assumption it was repaired. And it was a space heater and I just didn't think it was important. And . . . I think if the seller tells me something's been repaired, I take them at their word. I'm not . . . a contractor." (Bentley depo., p. 147.)

{¶ 60} As discussed above, the Pascoes and their inspector had the unimpeded opportunity to inspect the heat and observe any alleged defect with the heat. Additionally, the Pascoes lived in the house for approximately 14 months without any issue with the heat. Because the alleged issue with the heat could have been found in a reasonably diligent inspection, we find that there is no genuine issue of material fact on the Pascoes' R.C. 4735.67(A) claim. Additionally, the record is

devoid of any indication that Bentley made any representations or assisted Detke with the disclosure forms. Indeed, both disclosure forms provide that "[t]he statements contained in this form are made by the owner and are not the statements of the owner's agent or subagent[.]" Therefore, Bentley was entitled to summary judgment on this claim.

### 3. Civil Conspiracy

{¶ 61} Third, the Pascoes attack the grant of summary judgment on their civil-conspiracy claim. The Pascoes claim that Detke and Bentley have been friends for over twenty five years and their conduct was "classic civil conspiracy under Ohio law." (Pascoes' brief, p. 20.) Civil conspiracy is defined as "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995), quoting *LeFort v. Century 21– Maitland Realty Co.*, 32 Ohio St.3d 121, 126 (1987), citing *Minarik v. Nagy*, 8 Ohio App.2d 194, 196 (8th Dist. 1963).

{¶ 62} In the matter before us, the Pascoes argue that Detke and Bentley both knew of the issue with the heat and agreed to conceal it and conceal that the previous sale failed because of water leaking from the stack. The issue of the failed sale stems from Michael's deposition testimony that when he spoke with the previous prospective purchasers, he learned that the sale failed at inspection in part because of a water leak that occurred while the prospective purchasers were in the home, as well as electrical issues that caused them concern and possibly issues with

the roof. The Pascoes maintain that Bentley should have disclosed these defects to them but instead hid the real reason and told the Pascoes the husband had not seen the home and when he did see it, he did not like it.

{¶ 63} Civil conspiracy, however, is a derivative claim that cannot be maintained without an underlying tort that is actionable without the conspiracy. *Arnoff v. PAJ Ents.*, 2022-Ohio-1759, ¶ 18 (8th Dist.), citing *Adams v. Margarum*, 2017-Ohio-2741, ¶ 21 (10th Dist.) ("[A] civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy."). In this case, because the Pascoes failed, as a matter of law, on their other claims, including the fraud claims, their civil-conspiracy claim fails as well.

### 4. Fraud

{¶ 64} In their amended complaint, the Pascoes alleged fraud against Bentley. Bentley, however, argues that the Pascoes abandoned and waived any argument on appeal regarding their fraud claim against them. We agree.

{¶ 65} In their reply brief, the Pascoes contend that they did not abandon their fraud claim against Bentley because in their appellate brief they noted evidence of "three specific acts in furtherance of the fraud against the Pascoes: (1) not disclosing the heating defect, (2) misrepresenting the cause of the failed sale, and (3) airing out the sewer gas smell." (Pascoes' brief, p. 20-21.) Their only reference to this, however, is structured within their discussion regarding the trial court's dismissal of their civil-conspiracy claim and without any citation to the record in support of their claim. The Pascoes do not separately argue their fraud claim against

Bentley, nor do they support their contention with citations to the authorities, statutes, and parts of the record on which they rely. Therefore, we decline to address any argument relating to their fraud claim against Bentley. App.R. 16(A)(7) and App.R. 12(A)(2).

### 5. Respondeat Superior

{¶ 66} Lastly, the Pascoes argue the trial court erred in dismissing their claims against Howard Hanna. Relying on *Auer v. Paliath*, 2014-Ohio-3632, ¶ 16, they contend that Howard Hanna, as the real estate broker, is vicariously liable for Bentley's actions, as the real estate agent, if that agent is acting in the course and scope of their employment. Similar to civil conspiracy, respondeat superior is a derivative claim. *Orac v. Montefiore Found.*, 2024-Ohio-4904, ¶ 22 (8th Dist.), quoting *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 255 (1990) ("In the employment-law context, 'the most common form of derivative or vicarious liability is that imposed by the law of agency, through the doctrine of respondeat superior.'") Therefore, "'a principal is vicariously liable only when an agent could be held directly liable.'" *Id.*, quoting *Natl. Union Fire Ins. Co. v. Wuerth*, 2009-Ohio-3601, ¶ 22. Having found that the Pascoes' claims against Bentley fail as a matter of law, their respondeat superior claim against Howard Hanna likewise fails as a derivative claim.

{¶ 67} Thus, based on the foregoing, we find that the trial court properly granted summary judgment in favor of Bentley and Howard Hanna. Even when construing the evidence in most strongly in favor of the Pascoes, the Pascoes have

failed to demonstrate a genuine issue of material fact.  Bentley and Howard Hanna are entitled to judgment as a matter of law.

{¶ 68} Therefore, the third assignment of error is overruled.

{¶ 69} Accordingly, judgment is affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EMANUELLA D. GROVES, P.J., and
SEAN C. GALLAGHER, J., CONCUR